BOARD OF TRUSTEES OF THE NILES POLICE PENSION FUND, Plaintiff-Appellee, v. THE DEPARTMENT OF INSURANCE *et al.*, Defendants-Appellants.

First District (1st Division)   No. 1—90—1418

Opinion filed August 19, 1991.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellants.

Richard J. Troy, of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

This action on administrative review arises from an order of the circuit court of Cook County reversing a final administrative determination of the Director of the Illinois Department of Insurance (Director) which found a nine-member Board of Trustees of the Niles Police Pension Fund (Pension Board) to be constituted in violation of section 3—128 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 3—128). The Director ordered the Pension Board to reduce its number of members to five in compliance with section 3—128 of the Pension Code. The Pension Board filed a timely complaint for administrative review. The trial court reversed the Director's order.

In December 1974, the Pension Board passed a resolution recommending that the Board of Trustees of the village of Niles (Village Trustees) increase the composition of the Pension Board from five to nine members. On January 28, 1975, the village acceded to the Pension Board's request and enacted ordinance No. 1975—2. That ordinance amended section 25—41 of the Village of Niles Code of Ordinances to provide for a nine-member Pension Board, with five members appointed by the mayor and four members elected by the active members of the police department.

Article 3 of the Illinois Pension Code governs police pension funds in municipalities with populations of 5,000 or more but less than 500,000. (Ill. Rev. Stat. 1985, ch. 108½, pars. 3—101, 3—103.) Section 3—128 provides in pertinent part that

"[a] board of 5 members shall constitute a board of trustees to administer the pension fund * * *.

Two members of the board shall be appointed by the mayor or president of the board of trustees of the municipality involved. The 3rd and 4th members of the board shall be elected from the active participants of the pension fund by such active participants. The 5th member shall be elected by and from the beneficiaries." Ill. Rev. Stat. 1985, ch. 108½, par. 3—128.

In June 1975, the General Assembly passed a bill which added section 3—150 to the Pension Code. Currently, section 3—150 provides:

"A home rule unit, as defined in Article VII of the 1970 Illinois Constitution or any amendment thereto, shall have no power to change, alter, or amend in any way the provisions of this Article. A home rule unit which is a municipality, as defined in Section 3—103, shall not provide for, singly or as part of any plan or program, by any means whatsoever, any type of retirement or annuity benefit to a police officer other than through establishment of a fund as provided in this Article." Ill. Rev. Stat. 1985, ch. 108½, par. 3—150.

In April 1988, the Public Employee Pension Fund Division (Division) of the Department of Insurance concluded an audit of the Pension Board covering a six-year period that ended on April 30, 1987. The Division is responsible for ascertaining whether the full effect is being given to the statutory provisions governing the operation of such funds or systems. (50 Ill. Adm. Code §6301.30(a) (1985).) The auditor found nine violations, including the fact that the Pension Board had nine members in contravention of section 3—128 of the Pension Code. On September 9, 1988, the Division forwarded the auditor's report to the secretary of the Pension Board along with a letter directing the Pension Board to respond to each item in the report and to state how the Pension Board would remedy the violations.

On October 6, 1988, the treasurer of the Pension Board responded to the report. The treasurer informed the Division that the Pension Board had taken steps to comply with all of the violations except that concerning its composition. The treasurer responded that "[a]lthough the current Board of Trustees is not constituted in accordance with Section 3—128 of the code, the Board is comprised of an effective and diverse group of individuals who have conducted the affairs of the Police Pension Fund in an equitable, efficient and competent manner."

On December 5, 1988, the Director issued a compliance order to the Pension Board, directing it to take immediate steps to comply with section 3—128 of the Pension Code within 15 days to avoid a hearing. The Pension Board's attorney responded on January 20, 1989, that the Pension Board did not have to comply with section 3—128 because the village ordinance providing for a nine-member board was enacted prior to the home rule preemption provision contained in section 3—150, thus contending that the nine-member board was "grandfathered in." On June 1, 1989, the Director issued a notice of hearing and appointed a hearing officer to the case. The attorney for the Department of Insurance submitted a prehearing memorandum of law on June 21, 1989. The hearing was held on June 22, 1989.

Jerry Sheehan, a Village of Niles police officer and secretary of the Pension Board, testified that he was aware that the Pension Board had passed a resolution requesting a nine-member Board and that such number did not comport with State law. Sheehan testified that one of the duties of a trustee is to follow State statutes. Sheehan never discussed the conflict between the village ordinance and State law with the members of the Pension Board and, further, never sought a Pension Board resolution requesting the village to amend its ordinance to conform to State law. Sheehan assumed the State had given tacit approval to the Board. Sheehan did not have any conversations with employees of the Department of Insurance or with the Director.

Dwight O. Anderson, the Deputy Director for the Department of Insurance, testified that he first learned of the Pension Board's failure to comply with section 3--128 during a 1977 audit of the Pension Board. Anderson testified that the Director never informed the Pension Board that it could operate with nine members. Anderson testified that he had discussed the composition of the Pension Board with the Village Trustees. Anderson testified that the Village Trustees had acknowledged that the Pension Board did not comply with section 3—128, but gave no indication of an intent to bring the Pension Board into compliance. Anderson also testified that he perceived no benefit to a nine-member board as opposed to a five-member board.

At the close of the evidence, the Pension Board submitted a brief in support of a finding in its favor. The Pension Board argued that it lacked the authority to reconstitute the Pension Board and that, in any event, it did not have to comply with section 3—128.

On August 31, 1989, the hearing officer issued his findings of fact, conclusions of law and recommendations. The hearing officer took official notice of the fact that the Village of Niles is a municipality as defined in section 3—103 of the Pension Code. The hearing officer concluded that the Pension Board is subject to the requirements of Article 3 of that code. He further concluded that section 3—150 of the Pension Code preempts the village ordinance and that the Pension Board must be reduced from nine to five members in compliance with section 3—128. The hearing officer recommended that a compliance order be directed to the Pension Board and that a fine be assessed for failure to comply, and he entered costs against the Pension Board.

On September 14, 1989, the Director issued an order adopting the findings, conclusions and recommendations of the hearing officer. The Director ordered the Pension Board to reduce its number to five as required by section 3—128 within 35 days. Additionally, the Director

entered a monetary penalty against the Pension Board and ordered it to pay costs.

On October 20, 1989, the Pension Board filed a timely complaint for administrative review. At the close of arguments on April 18, 1990, the court reversed the Director's determination. The court found that the Director had improperly proceeded against the Pension Board rather than against the officials of the village. The court stated that its reversal was "without prejudice to the filing of a *mandamus* action against the Village Board which is the proper party, not the Trustees of the Fund." On May 15, 1990, the Illinois Department of Insurance and its Director timely filed this appeal.

The Pension Board asserts that it is not required to have a five-member board as set forth in section 3—128. The Pension Board maintains that because the village adopted ordinance No. 1975—2, which provides for a nine-member board, prior to the effective date of section 3—150 of the Pension Code, which denies home rule units with populations of 5,000 or more but less than 500,000 the authority to depart in any way from the requirements of Article 3 of the Pension Code, the village ordinance was "grandfathered in."

■■ Under Article VII, section 6(a), of the Illinois Constitution of 1970, a home rule unit of government "may exercise any power and perform any function pertaining to its government and affairs." (Ill. Const. 1970, art. VII, §6(a).) "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, §6(i).

In June 1975, the General Assembly passed House Bill 674, which added section 3—150 to the Pension Code, which limits the powers of home rule units of local government as they pertain to the police pension fund. (Pub. Act 79—988, §1, eff. Sept. 17, 1975.) This provision expressly denies home rule units with populations of 5,000 or more but less than 500,000 the authority to establish or maintain pension funds that do not conform to the requirements of Article 3 of the Pension Code. (Ill. Rev. Stat. 1989, ch. 108½, par. 3—150.) Since the Speaker of the House and the Parliamentarian determined that the bill was a denial of power to all home rule units, not just home rule units that are "municipalities" as defined in Article 3 of the Pension Code, it required a supermajority for passage. (79th Ill. Gen. Assem., House Proceedings, June 18, 1975, at 17, 18; June 25, 1975, at 21 (comments of Speaker Redmond).) Both houses adopted the measure by a three-fifths majority. (Journal of the House of Representatives of

the 79th General Assembly of the State of Illinois, June 25, 1975, at 6339-40 (H.B. 674) (112 yeas, 28 nays, 6 present/ 177 members); Journal of the Senate of the 79th General Assembly of the State of Illinois, June 16, 1975, at 2586-87 (H.B. 674) (54 yeas, 0 nays, 2 present/ 59 members).) Senator Shapiro specifically cited the nine-member composition of the Board of Trustees of the Niles Police Pension Fund as an example of the need for section 3—150.

Relying on *Board of Trustees of the Village of Rosemont v. Mathias* (1982), 109 Ill. App. 3d 894, 441 N.E.2d 362, the Pension Board contends that requiring it to comply with section 3—128 improperly gives section 3—150 retroactive effect. In *Mathias*, the Director of the Department of Insurance did not contend that the General Assembly preempted the Pension Board's home rule powers before October 1, 1975, or that section 4—142 should be retroactively applied. (*Mathias*, 109 Ill. App. 3d at 897, 441 N.E.2d at 364.) Ultimately, the *Mathias* court remanded the cause to the trial court so that it could address whether Rosemont had a fire department or any firefighters within the meaning of the statutory definitions. (*Mathias*, 109 Ill. App. 3d at 900, 441 N.E.2d at 367.) Therefore, *Mathias* is not helpful in deciding this case.

The Pension Board also relies on *Sanders v. City of Springfield* (1985), 130 Ill. App. 3d 490, 474 N.E.2d 438, for the contention that the number five for the pension board membership has "no particular magic." The disputed ordinance in *Sanders* did not affect any provision of the Pension Code because the Code is silent as to whether participation is mandatory or voluntary. (*Sanders*, 130 Ill. App. 3d at 494, 474 N.E.2d at 441.) In *Sanders*, the disputed ordinance merely conditioned employment as a Springfield police officer on membership and participation in the pension fund and, therefore, did not affect the administration of the fund, but rather, affected the hiring and discharging provisions of the Civil Service Act. (*Sanders*, 130 Ill. App. 3d at 494-95, 474 N.E.2d at 441.) Contrarily, having a nine-member board and a different procedure for appointing and electing the Pension Board does affect the administration of the Pension Board.

In *Prudential Insurance Co. of America v. City of Chicago* (1977), 66 Ill. 2d 437, 362 N.E.2d 1021, the court held that an October 1974 statute which prohibited home rule units from assessing fees and taxes against insurance companies preempted a previously enacted home rule ordinance of the City of Chicago, which imposed an employer's expense tax on every employer of 15 or more full-time employees. (*Prudential Insurance Co.*, 66 Ill. 2d at 441, 362 N.E.2d at 1022.) The Pension Board contends that *Prudential Insurance Co.* is

distinguishable because there was a blanket prohibition of municipal action except as it pertained to "any type of retirement or annuity benefit." Likewise, in the case at bar, the General Assembly limited any home rule unit from providing for any type of retirement or annuity benefit to a police officer other than through establishment of a fund as provided in Article 3. (Ill. Rev. Stat. 1989, ch. 108½, par. 3—150.) Thus, *Prudential Insurance Co.* is analogous to the case at bar.

■ It is undisputed that the Village of Niles is a "municipality" within the meaning of the section 3—103 of the Pension Code and that it has "police officers" within the meaning of section 3—106. Since pension benefits may not be provided "other than through establishment of a fund as provided in *** Article [3]," we find that the Director correctly determined that the Pension Board is required to be constituted in conformity with section 3—128 of the Pension Code.

The Pension Board was created by the corporate authorities of the Village of Niles pursuant to the then applicable State law. It is clear that the Pension Board has no authority, either by statute or by ordinance, to change its own composition. The powers of the Pension Board are set forth in the Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 3—131 *et seq.*). Within that statute there is no grant of authority to the Board to reconstitute itself nor is there authority to reject the nominees of the Village Trustees. It is well-settled law in Illinois that units of government have only those powers necessarily implied from the express grant of power. (*Marquette Properties, Inc. v. City of Wood Dale* (1987), 159 Ill. App. 3d 307, 512 N.E.2d 371; *Appeal Board of the Department of Environmental Control v. United States Steel Corp.* (1971), 48 Ill. 2d 575, 272 N.E.2d 46.) Thus, the Pension Board has no authority to reconstitute itself or to determine which two of the Village Trustees' nominees it should accept and which others to reject.

■ This action began as an administrative review action. We are limited to reviewing the record before the administrative agency. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110.) The Administrative Procedure Act defines a party as "each person or agency named or admitted as a party, or properly seeking and entitled as of right to be admitted as a party." (Ill. Rev. Stat. 1989, ch. 127, par. 1003.06.) At no time were the Village Trustees made a party to the proceedings at the administrative level. Further, the Illinois Department of Insurance never argued that the order of its Director was binding on the Village Trustees. If the Department had made such an argument, the Village Trustees would have had the right to intervene in the proceedings. (*Caterpillar Tractor Co. v. Lenckos* (1979), 77 Ill. App. 3d 90, 395

N.E.2d 1167.) The order of the Director is not addressed to the Village Trustees, but only to the Pension Board. The order directs the Pension Board to do something it is not authorized to do, namely, reconstitute itself. Additionally, the fine cited by the Director for noncompliance with the statute was imposed against the Pension Fund, not the Village of Niles corporate fund. We hold that the Pension Board was not the proper party from which to seek relief in this case.

Therefore, the decision of the circuit court of Cook County to reverse the Director's order is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.